IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:24-cr-65-1

MARKEL TREVON SMITH,

Defendant.

### MEMORANDUM OPINION

This matter is before the Court on the NOTICE OF MR. SMITH'S OBJECTION TO THE SENTENCING GUIDELINES CALCULATION, ECF No. 84 ("the OBJECTION"), filed by Markel Trevon Smith ("Smith" or "Defendant").

Smith was indicted for Possession of Firearms by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) ("COUNT ONE") and Possession of a Machinegun in violation of 18 U.S.C. § 922(o) and 26 U.S.C. § 5845(b) ("COUNT TWO"). ECF No. 1, at 1-2. Smith pled guilty to the offense of Possession of a Machinegun in violation of 18 U.S.C. § 922(o). ECF No. 71.[1] He objects to the Probation Office's Presentence Investigation Report, ECF No. 79 ("PSR"), because it recommends imposing a four-point (4) enhancement to his Base Offense Level for possessing a firearm with "a serial number that was modified such that the original information is rendered

---

[1] At Smith's sentencing hearing held on January 23, 2025, the Government moved to dismiss COUNT ONE of the Indictment. The Court granted that oral motion on the record in open court. ECF No. 93.

illegible or unrecognizable to the unaided eye" under U.S.S.G §
2K2.1(b)(4)(B)(i). ECF No. 84, at 1.

Smith argues that the enhancement should not apply to him
because, although two-of-the-three serial numbers on a weapon in
his possession were modified, a third remained untouched and
legible. Id. at 2-3. This is the same objection in form to the
enhancement that Smith's co-defendant, Trevor Dillon Rhodes
("Rhodes"), made during his sentencing. ECF No. 68, at 8; ECF No.
45, at 3-4. On October 30, 2024, the Court overruled Rhodes'
objection and imposed a sentence that included the enhancement in
its calculation. ECF No. 77. On November 1, 2024, the Sentencing
Commission promulgated amendments to the Sentencing Guidelines,
which included new language for U.S.S.G. § 2K2.1(b)(4)(B)(i).
Smith argues that the enhancement's amended language renders it no
longer applicable to him based on the facts of his case.

To the Court's knowledge, this is the first case interpreting
the new language of the enhancement in U.S.S.G. § 2K2.1(b)(4)(B)(i)
since its promulgation on November 1, 2024. The Court must
determine whether that enhancement applies to a defendant when
some, but not all, of a firearm's serial numbers have been modified
to the point of illegibility to the unaided eye. At Smith's
sentencing hearing, the Court found that the enhancement applied
and overruled his objection. For the reasons set forth below, the
OBJECTION, ECF No. 84, was overruled.

2

## I. FACTS[2]

On January 4, 2024, Smith and his co-defendant, Rhodes, were apprehended at a Jiffy Mart in Chesterfield County, Virgina, after employees called the police to report a robbery. After detaining Smith and Rhodes, the police officers searched the vehicle that Smith and Rhodes had driven to the Jiffy Mart. The search yielded four firearms: (1) a Shooters Arms Manufacturing (S.A.M.), Inc., Military Model, .45 caliber pistol, bearing serial number ML137454; (2) a Glock, Model 45, 9mm caliber pistol, bearing serial number AGGE159 and with a Glock switch machinegun conversation device attached ("the Glock"); (3) a Glock, Model 30, .45 caliber pistol, bearing serial number PBL369; (4) a Ruger, Model GP100, .357 caliber revolver, bearing serial number 173-11992; and (5) various goods, cumulatively valued at less than $1,000, that had been stolen from the Jiffy Mart. ECF No. 61, at 1-2. The offense of conviction was for possession of the Glock, which is classified as a machinegun due to its alterations pursuant to 18 U.S.C. § 922(o) and 26 U.S.C. § 5845(b).

Originally, the Glock had three visible serial numbers; however, at some point, two of those serial numbers were modified

---

[2] Because the facts in the cases of Smith and Rhodes are nearly identical, the FACTS portion of this Memorandum Opinion parallels the FACTS portion of this Court's Memorandum Opinion in United States v. Rhodes, No. 3:24-cr-65-2, 2024 U.S. Dist. LEXIS 197662, at *2-5 (E.D. Va. Oct. 30, 2024).

by being scratched off. For one serial number, the only legible part is the number "9" at the end of the number. For a second serial number, the letter "A" is visible at the start of the number and the number "9" at the end. One serial number, reading AGGE159, however, remains unmodified and intact on the barrel of the Glock.[3]

Officers later determined that Smith had been the driver of the vehicle, and that Rhodes had been the passenger. The firearms were distributed throughout the vehicle, with some near the driver's seat where Smith had been seated and others in the right-side passenger area where Rhodes had been seated. Other firearms were found in the back of the vehicle. ECF No. 61, at 2. As part of his guilty plea, Smith admitted to knowingly possessing the Glock with the modified serial numbers, with the intent to sell it in the City of Richmond, Virginia. Id. at 1-3.

On October 18, 2024, the Court accepted Smith's guilty plea as to COUNT TWO. ECF No. 71. The Probation Officer filed the initial PSR on December 18, 2024. ECF No. 78. The PSR calculated Smith's Total Offense Level as 23 after applying the four-point enhancement and applying appropriate reductions for his acceptance of responsibility for his conduct. Id. at 7-8. It further assigned

---

[3] The Court conducted a visual examination of the firearm in open court during a hearing held on Thursday, January 23, 2025. Neither party disputes that two out of the three serial numbers were "modified" under the enhancement's new language, as opposed to altered or obliterated.

4

Smith a Criminal History Category III based on his prior criminal offenses. Id. at 13. With an Offense Level of 23 and Criminal History Category III, the PSR correctly calculated a sentencing guidelines range of 57-71 months incarceration. Id. at 22.[4]

On August 22, 2024, Smith's co-defendant, Rhodes, filed a motion objecting to the application of the four-point enhancement in U.S.S.G. § 2K2.1(b)(4)(B)(i) to him based on his possession of the Glock. ECF No. 45. At the time of Rhodes' objection, U.S.S.G § 2K2.1(b)(4)(B)(i) read as follows: "If . . . any firearm had <u>an altered or obliterated</u> serial number . . . increase [the Base Offense Level] by 4 levels." U.S.S.G. § 2K2.1(b)(4)(B)(i) (U.S. Sent'g Comm'n 2023) (emphasis added). On October 30, 2024, the Court rejected Rhodes' objection based on the text of the enhancement, persuasive precedent from six U.S. Circuit Courts of Appeals, and the purpose and intent behind the enhancement and its relevant amendments, including, in part, the proposed November 1, 2024, amendment. Rhodes, 2024 U.S. Dist. LEXIS 197662, at *9-16. On November 1, 2024, the Sentencing Commission promulgated new amendments to the Guidelines, including amended language to U.S.S.G. § 2K2.1(b)(4)(B)(i). The enhancement now reads: " If . . . any firearm <u>had a serial number that was modified</u> such that the

---

[4] On January 6, 2025, the Probation Offense filed a new version of the PSR to reflect Smith's objection to its application of U.S.S.G. § 2K2.1(b)(4)(B)(i). ECF No. 79, at 26-27.

original information is rendered illegible or unrecognizable to the unaided eye . . . increase [the Base Offense Level] by 4 levels." U.S.S.G. § 2K2.1(b)(4)(B)(i) (U.S. Sent'g Comm'n 2024) (emphasis added).

On January 9, 2025, Smith filed the OBJECTION to the application of the newly amended four-point enhancement to him. ECF No. 84. If the Court agrees with Smith that the enhancement's newly amended language renders it inapplicable to his factual scenario, Smith's Total Offense Level would decrease from 23 to 19, which, when considered alongside his criminal history score, would place Smith in a new sentencing guidelines range of 37-46 months. U.S.S.G Ch. 5, Pt. A. The parties submitted full briefing on whether the enhancement in its new form should apply to Smith, taking into account this Court's prior decision in Rhodes. ECF Nos. 84, 87, 88. The Court has fully considered the OBJECTION, the briefs, and the arguments presented by the parties in open court during Smith's Sentencing Hearing on Thursday, January 23, 2025. At that hearing, the Court overruled Smith's OBJECTION, finding that the enhancement's new language did not fundamentally alter its necessary application to the facts of this case. Today, this Memorandum Opinion sets forth fully the reasons for the Court's decision to overrule the OBJECTION.

## II. ANALYSIS

Smith objects to using the four-point enhancement for possessing a firearm with a modified serial number in calculating his sentence of incarceration. He asks the Court, instead, to impose a sentence without applying that four-point enhancement, which would reduce his sentencing guidelines range from 57-71 months to 37-46 months. ECF No. 84, at 1-2. To support his position, Smith argues that the enhancement's amended language as of November 1, 2024, removed the textual hook that this Court relied on in Rhodes to hold that the enhancement applies to these facts. Id. at 4 (noting that the Sentencing Commission removed "the modifier 'an' prior to the language 'altered or obliterated serial number'" and replaced it with "a serial number that was modified such that the original information was rendered illegible or unrecognizable to the unaided eye" (quoting U.S.S.G. § 2K2.1(b)(4)(B)(i) (U.S. Sent'g Comm'n 2023); U.S.S.G. § 2K2.1(b)(4)(B)(i) (U.S. Sent'g Comm'n 2024)); Rhodes, 2024 U.S. Dist. LEXIS 197662, at *9-10. Because of the amended language, Smith claims that the Court's decision in Rhodes, as well as the decisions of six U.S. Circuit Courts of Appeals holding that the enhancement applies to materially the same facts, is rendered inapposite to the disposition of this case. ECF No. 84, at 4. Further, Smith argues that the amended enhancement's new language that focuses on firearms with serial numbers modified to the point

7

of being "illegible or unrecognizable to the unaided eye" better aligns with the enhancement's traceability purpose. Id. (quoting U.S.S.G. § 2K2.1(b)(4)(B)(i)). According to Smith, the primary purpose of the enhancement is to ensure that firearms remain traceable and to punish more severely offenders who render firearms completely untraceable. To that end, Smith's firearm was still traceable because one serial number remained unmodified—indeed, police did trace the firearm using this number—and therefore applying the enhancement to Smith would contravene the purpose and intent of the enhancement in its new form. Id. at 4-5.

The Government asks the Court to reject Smith's arguments and overrule the OBJECTION. ECF No. 87, at 1. The Government argues that the Court's decision in Rhodes remains dipositive of this case. It argues that the Court's textual analysis of the enhancement in its prior form applies equally to the amended version because the Sentencing Commission's change in the article "an" to "a" before the term "serial number" does not suddenly change the meaning of the enhancement's text to mean "any." ECF No. 87, at 3-4. The Government also disputes Smith's argument regarding the purpose and intent of the amended enhancement. It points to out-of-circuit circuit court holdings to note that the purpose of the enhancement, at least in its previous form, supports the same conclusion that the Court reached in Rhodes—that the enhancement applies where some, but not all, of the serial numbers

8

on a firearm are altered or obliterated. Id. at 4-5. Similarly, it argues that nothing in the history of the newly amended language warrants a different outcome here; instead, that same purpose and intent supports applying the enhancement to Smith. Id. at 1-2 (referencing Rhodes, 2024 U.S. Dist. LEXIS 197662, at *13-14).

\* \* \*

Although this matter is before the Court on the Defendant's OBJECTION, the Government has the burden to prove, by a preponderance of the evidence, that the enhancement should apply to Smith. Rhodes, 2024 U.S. Dist. LEXIS 197662, at *8; see also United States v. Evans, 760 F. App'x 188, 191 (4th Cir. 2019) (citing United States v. Steffen, 741 F.3d 411, 414 (4th Cir. 2013)). For the following reasons, the Government has met its burden. The OBJECTION was therefore overruled.

The facts of this case are well settled. Neither party disputes that Smith was a convicted felon who possessed the Glock, which constitutes a machinegun pursuant to 26 U.S.C. § 5845(b). Both parties also agree that the Glock had three serial numbers, two of which were "modified," rendering them "unreadable," while the third was easily readable and had no modifications. ECF No. 84, at 2; ECF No. 87, at 3.

Just as in Rhodes, then, a purely legal question remains before the Court: whether U.S.S.G. § 2K2.1(b)(4)(B)(i) applies where only some, but not all, of a firearm's multiple serial

numbers are modified to the point of illegibility to the unaided eye. Due to the Sentencing Commission's recent amendments to that enhancement since the Court's decision in Rhodes, this issue again comes to the Court as one of first impression in the Fourth Circuit. However, the changed language of the enhancement does not lead to a different outcome from the Court's decision in Rhodes. The text of the Sentencing Guidelines in its new form as well as the purpose and intent underlying the enhancement support the conclusion that the newly worded enhancement "does apply when only some of a firearm's serial numbers are [modified] while another serial number on the same firearm remains [unmodified]." Rhodes, 2024 U.S. Dist. LEXIS 197662, at *9.[5]

We begin with the plain text of the enhancement, which reads: "If . . . any firearm had a serial number that was modified such that the original information is rendered illegible or unrecognizable to the unaided eye . . . increase [the Base Offense Level] by 4 levels." U.S.S.G. § 2K2.1(b)(4)(B)(i). Smith's

---

[5] In Rhodes, in addition to the text and purpose behind the enhancement in its prior form, the Court also relied on the decisions from six U.S. Courts of Appeals that had held that the enhancement applies to individuals who possess a firearm with some, but not all, of its serial numbers altered or obliterated. E.g., United States v. Serrano-Mercado, 784 F.3d 838, 850 (1st Cir. 2015). In deciding the present case, the Court no longer directly relies on that same precedent from the First, Second, Fifth, Sixth, Eighth, and Eleventh Circuits, however, because those cases interpreted the old language of the enhancement to determine that it applied to the present factual scenario. Rhodes, 2024 U.S. Dist. LEXIS 197662, at *10-12 (collecting cases).

argument suffers from the same core infirmity as his co-defendant's arguments, namely, both focus on the wrong portion of the enhancement's text. Rhodes focused on the meaning of the terms "altered or obliterated" in the prior enhancement, ECF No. 45, at 2-4, whereas Smith focuses on the phrase "modified such that the original information is rendered illegible or unrecognizable to the unaided eye" of the amended enhancement. ECF No. 84, at 4. Neither phrase is the operative language for the Court's purposes. Instead, in this case, the relevant language is "a serial number that was modified." U.S.S.G. § 2K2.1(b)(4)(B)(i) (emphasis added).

In Rhodes, this Court held that:

> The guideline does not state that it only applies when all serial numbers have been altered or obliterated. Instead, by using the article "an," the text of the enhancement most plainly reads to apply where even just one of many serial numbers on a firearm has been altered or obliterated. Whether it be one of three or one of one hundred, altering or obliterating one serial number constitutes "an altered or obliterated serial number," rendering the enhancement applicable.

Rhodes, 2024 U.S. Dist. LEXIS 197662, at *9 (emphasis in original) (internal citations omitted). It is true, as Smith argues, that the Sentencing Commission eliminated the term "an" preceding the term "serial number" from the enhancement. ECF No. 84, at 4. However, upon removing the article "an," the Commission inserted a new article in its place—"a"—as in "a serial number." U.S.S.G. § 2K2.1(b)(4)(B)(i). Smith would have us believe that this change renders the enhancement applicable only in the situation where

11

every serial number on a firearm has been modified to the point of illegibility. It strains the plain meaning of the text, however, to somehow read "a" as "all" or "every" under these circumstances.

As the Eleventh Circuit held in a case prior to the enhancement's 2024 amendments:

> The guidelines require only that the firearm in question "had an altered or obliterated serial number." . . . We have said in other contexts that "[i]n common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'" . . . Read in that fashion, the § 2K2.1(b)(4)(B) enhancement applies either when any serial number on a gun has been altered or obliterated or when just one serial number has been altered or obliterated. Warren loses under either reading because one of the serial numbers on his gun was altered or obliterated.

United States v. Warren, 820 F.3d 406, 408 (11th Cir. 2016) (internal citations omitted) (emphasis and alterations in original). Just as "an" was followed by a restrictive modifier in the prior version of the enhancement, a restrictive modifier—"serial number that was modified"—still follows an article, "a," in the enhancement's amended version. Compare U.S.S.G. § 2K2.1(b)(4)(B)(i) (Sent'g Comm'n 2023), with U.S.S.G. § 2K2.1(b)(4)(B)(i) (Sent'g Comm'n 2024). Therefore, just as "an" meant "one" in the enhancement's prior form, the text supports the view that "a" still means "one" rather than "any" in the enhancement's amended form. The text of the enhancement in its new form plainly applies to the present situation—where an individual

possesses a firearm with some, but not all, of its serial numbers modified to the point of being illegible to the naked eye.

Smith possessed a firearm that originally had three serial numbers on it; however, at some point, two of those serial numbers were modified. Neither party disputes that these numbers were modified under common understandings of that term. Just as in Rhodes, one serial number on the gun had only the number "9" at the end of the serial number legible to the naked eye. For a second serial number on the weapon, the letter "A" is visible at the start of the serial number and the number "9" at the end. One serial number, reading AGGE159, remains unmodified and fully legible on the barrel of the firearm. See Rhodes, 2024 U.S. Dist. LEXIS 197662, at *3. The information originally intended to be conveyed by the two modified serial numbers has been "rendered illegible or unrecognizable to the unaided eye" due to their modification. U.S.S.G. § 2K2.1(b)(4)(B)(i). Therefore, Smith possessed a firearm with a modified serial number. By the plain text of the Sentencing Guidelines, the enhancement applies to Smith.

Although the plain text of the enhancement necessitates applying the enhancement to Smith, he claims that doing so would contravene the purpose and intent behind the enhancement as recently amended. ECF No. 84, at 2-3. Contrary to Smith's claims, however, the Sentencing Commission's purpose and intent behind the

13

enhancement's amended language was not to change the ordinary understanding of the text.

The Court already addressed this argument in Rhodes, albeit in dicta. In that case, the Court noted that the Commission had two purposes behind the enhancement in its prior form: (1) addressing the "difficulty in tracing firearms with altered or obliterated serial numbers," and (2) "the increased market for these types of weapons." Rhodes, 2024 U.S. Dist. LEXIS 197662, at *12 (quoting U.S.S.G. App. C, amend. 691 (Nov. 1, 2006)). The Court held that applying the enhancement where at least some, but not all, of a firearm's serial numbers had been altered or obliterated promoted both purposes. First, applying it promotes traceability because different parts of a firearm may be severable and/or interchangeable and multiple serial numbers provides more reliable identification of the weapon where one is rendered illegible. Id. at *14 (citing Serrano-Mercado, 784 F.3d at 850; United States v. St. Hilaire, 960 .3d 61, 64-65 (2d Cir. 2020)). Second, applying it deters individuals from possessing and selling altered firearms to others, which reduces the market for these firearms. Id. at *15. Smith's understanding of the amended enhancement's purpose and intent is not only wrong but would hinder these purposes as well.

In 2024, the Sentencing Commission amended the enhancement to address a split among the circuit courts on the meaning of the

14

term "altered." Id. at *13. It did not disturb a consensus among the circuit courts regarding the enhancement's applicability where at least some, but not all, of a firearm's serial numbers have been altered or obliterated. Indeed, in amending the enhancement, the Commission explicitly noted that "[c]ourts have held that if a firearm has more than one serial number on it, only one of the serial numbers needs to be altered to trigger the enhancement." Id. at *13 n.4 (citing Primer on Firearms Offenses, U.S.S.C. (May 1, 2024), https://www.ussc.gov/sites/default/files/pdf/training/primers/20 24_Primer_Firearms.pdf (prepared by the Office of the General Counsel) (p. 20 n.126) (citing St. Hilaire, 960 F.3d at 65 n.2)). The Commission also noted that all courts to address this issue agreed that a "serial number need not be scientifically untraceable for the enhancement to apply." Id. at *13 (citing Primer on Firearms, at 19-20) (emphasis removed). The Court held in Rhodes that these statements from the Commission undercut the argument that the purpose or intent behind the enhancement was to have it apply only when "every serial number on a firearm is altered or obliterated to the point of rendering the weapon untraceable. Instead, the language suggests that even those firearms made less traceable—because, for example, less than all of their serial numbers are visible—may warrant application of the enhancement." Id. at *13-14 (emphasis in original). The same remains true today.

Indeed, the Commission made these statements when amending the enhancement to its modern form. Nothing in the text or history of the enhancement supports the view that applying it only where all serial numbers on a weapon have been modified. Doing so would contradict the "consensus" of application among the courts that the Commission did not look to disturb in promulgating its amendments to the enhancement.

The plain text of U.S.S.G. § 2K2.1(b)(4)(B)(i), amended as of November 1, 2024, as well as the purpose and intent undergirding that enhancement, necessitate overruling Smith's OBJECTION. For these reasons, the Court holds that the four-point enhancement for possession of a firearm with a modified serial number applies when a defendant possesses a firearm with some, but not all, of its serial numbers modified to the point of illegibility or unrecognizability to the unaided eye.

### III. CONCLUSION

For the foregoing reasons, Smith's OBJECTION, ECF No. 84, was OVERRULED.


It is so ORDERED.

_____ /s/    _____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: February ___, 2025

16